

ENTERED
08/28/2018

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| KATHRYN NICHOLE DAHLIN § | CASE NO: 16-36169 | |
|     Debtor(s) § | | |
| § | CHAPTER 7 | |
| § | | |
| RONALD J. SOMMERS, CHAPTER 7 § | | |
| TRUSTEE § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 17-03317 | |
| § | | |
| WILLIAM DALE, *et al* § | | |
|     Defendant(s) § | | |

## **AMENDED MEMORANDUM OPINION**[1]

William and Lydia Dale sought to help their friend, Kathryn Nichole Dahlin by agreeing to pay off Ms. Dahlin's existing mortgage owed to Wells Fargo. (ECF No. 13 at 2). In return, the Dales expected to receive a first priority lien on the mortgaged home; however, after Ms. Dahlin filed for bankruptcy, the Dales became ensnared in a priority dispute with Ronald J. Sommers, the Chapter 7 Trustee. (ECF No. 13 at 6). The Dales and the Trustee filed cross motions for summary judgment. These parties each claim a superior right to the insurance proceeds that Ms. Dahlin received after a fire destroyed the home. (*See* ECF Nos. 13, 14).

The Trustee's motion for summary judgment is granted. The Dales' motion for summary judgment is denied.

### Background

The parties do not dispute the material facts in this case. (*See* ECF No. 13 at 6–9; ECF No. 14 at 2–4). This adversary proceeding is rooted in the 2012 divorce of Mark and Kathryn

---

[1] This Memorandum Opinion is amended pursuant to the District Court's Remand Order issued on July 9, 2018.

Dahlin. (ECF No. 13 at 6). Prior to the divorce, the Dahlins executed a Note and Deed of Trust in favor of Wells Fargo that secured the purchase of a home located at 20506 Riverside Pines in Humble, Texas. (ECF No. 14 at 2). After the divorce was finalized, Ms. Dahlin assumed sole ownership of the home and sole responsibility for making payments. Mr. Dahlin remained liable on the Note and Deed of Trust. Under the divorce decree, if Ms. Dahlin defaulted on her payment obligations, Mr. Dahlin could make any missed payment and foreclose on the home. (ECF No. 14 at 3).

This arrangement escalated tensions between the Dahlins, which culminated in Mr. Dahlin initiating the foreclosure process on the home. (ECF No. 14 at 3). Ms. Dahlin believed that she could prevent the foreclosure by paying off Wells Fargo's interest in the home, eliminating Mr. Dahlin's ability to foreclose. (ECF No. 14 at 3). To effectuate this plan, Ms. Dahlin reached out to the Dales who agreed to loan Ms. Dahlin the money needed to pay off Wells Fargo's Note in exchange for a first priority lien on the home. (ECF No. 14 at 3). Ms. Dahlin and the Dales memorialized this agreement on November 8, 2016, in a written Contract of Understanding, after which the Dales wired $188,000.00 directly to Wells Fargo to pay off the remaining balance on the Note. (ECF No. 13 at 7; ECF No. 14 at 3). However, Ms. Dahlin failed to contemporaneously execute a promissory note and deed of trust securing the Dales' interest in the home. (ECF No. 14 at 3).

On December 2, 2016, Wells Fargo recorded its Release of Lien in the Harris County Real Property Records Office. (ECF No. 13 at 7). After wiring Wells Fargo $188,000.00, the Dales claim that they continued pressuring Ms. Dahlin to provide them with the necessary documents to secure their interest in the home. Their entreaties were ignored. (ECF No. 14 at 4).

On December 3, 2016, the home was destroyed by fire. (ECF No. 14 at 4). Ms. Dahlin filed an insurance claim for both the home and her lost belongings pursuant to her homeowner's insurance policy. (ECF No. 14 at 4).

Ms. Dahlin finally acceded to the Dales' demands, meeting with attorney Liza Greene on December 5, 2017, to create a Promissory Note and Deed of Trust securing the Dales' first priority lien on the home. (ECF No. 13 at 7–8). However, unbeknownst to the Dales, Ms. Dahlin also finalized the filing of her chapter 13 bankruptcy while visiting Greene. (ECF No. 13 at 7). Greene filed Ms. Dahlin's bankruptcy petition on December 5, 2016, at 4:44 p.m., before the Note and Deed of Trust were delivered to the Dales. (ECF No. 13 at 7). The Dales recorded the documents securing their lien on the home in the Harris County Real Property Records Office on December 6, 2016, one day after Ms. Dahlin filed for bankruptcy. (ECF No. 13 at 7).

Ms. Dahlin received $333,687.95 in insurance proceeds for the fire damage. (ECF No. 13 at 9). Ms. Dahlin declared this amount in her bankruptcy schedules and claimed $332,281.00 as exempt under Texas Law, a portion of which includes her homestead exemption. (ECF No. 14 at 4). Pursuant to the Court's Order, the insurance funds were deposited in the Court's registry on January 25, 2017. (ECF No. 13 at 9).

Both the Dales and the Trustee claim a superior right to the insurance funds from the home fire. The Trustee claims that 11 U.S.C. § 544(a)(3) allows him to avoid the Dales' unperfected security interest in the property, which is then preserved for the benefit of the bankruptcy estate under § 550(a)(1). (ECF No. 13 at 10–16). The Dales claim that they have both (i) a constructive trust in the funds; and (ii) a right to equitable subrogation to the lien on the property, which the Trustee cannot avoid. Because Ms. Dahlin claimed the property as her

exempt homestead, the Dales allege that the proceeds of the property cannot belong to the estate. (ECF No. 14 at 6–12).

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding was referred to the Bankruptcy Court by General Order 2012-6. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings. A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016). Nevertheless, the Court is not obligated

to search the record for the non-moving party's evidence. *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012). "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. FED. R. CIV. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. FED. R. CIV. P. 56(c)(3). The Court should not weigh the evidence. *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016). A credibility determination may not be part of the summary judgment analysis. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. FED. R. CIV. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

## Analysis

The analysis first focuses on the Dales' rights to equitable subrogation. Because that right—as of the petition date—was merely an unsecured claim under § 101 of the Bankruptcy Code, the Dales have no property interest in the insurance proceeds.

The Court then examines the question of whether the Trustee may avoid two separate, but related, liens the Dales held. First, the Dales held an unrecorded lien on the petition date that was represented by the lien granted in the Contract of Understanding. Because that lien was unrecorded, it is avoidable under § 544 of the Bankruptcy Code. Second, the Dales held a lien that was recorded after the petition date. That lien, voluntarily executed by Ms. Dahlin, is avoidable under § 549 of the Bankruptcy Code.

Finally, the Court addresses whether the Dales have a constructive trust in the insurance proceeds. Even if the Dales were entitled to the remedy of a constructive trust, the Trustee's status as a bona fide purchaser means his interest in the home is not subject to this alleged constructive trust under Texas law.

*Equitable Subrogation*

The parties dispute the effect equitable subrogation has on the trustee's right to avoid the lien. The Dales claim equitable subrogation is a right that they may enforce and, as a result, no lien exists for the Trustee to avoid. (ECF No. 14 at 6).

In response, the Trustee argues that the Dales abandoned their equitable subrogation argument and should be judicially estopped from bringing such a claim. (ECF No. 16 at 11–17). However, the Trustee misreads the Dales' argument, which states: "When the Dales paid off the Wells Fargo Note, they became equitably subrogated to the rights of Wells Fargo . . . the Dales' remedy was contingent upon a successful lawsuit . . . there was no lien to avoid as of the petition date." (ECF No. 14 at 6). The Dales continue to assert a right to equitable subrogation; however, the Dales claim that, until this right is adjudicated, nothing exists for the Trustee to avoid under 11 U.S.C. § 544.

"The Doctrine of equitable subrogation allows a party who would otherwise lack standing to step into the shoes of and pursue the claims belonging to a party with standing." *Frymire Eng'g Co., v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008). The party asserting a right to equitable subrogation must have "involuntarily paid a debt primarily owed by another in a situation that favors equitable relief." *Id*. The goal of equitable subrogation is to prevent unjust enrichment of a party who receives a benefit that does not arise from legal duty or contract. *Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 438 (Tex. App.—Dallas 2011).

The Dales argue that "[w]hen the Dales paid off the Wells Fargo Note, they became equitably subrogated to the rights of Wells Fargo." (ECF No. 14 at 6). There is no question that Ms. Dahlin owed a debt to Wells Fargo and that the Dales paid off that debt when they sent $188,000.00 to Wells Fargo on November 9, 2016. (ECF No. 14 at 3). Once Wells Fargo

recorded its Release of Lien, it was no longer entitled to enforce its lien rights and Ms. Dahlin would receive a windfall unless the Dales' rights to the home and its proceeds were enforced. (ECF No. 13 at 7). Accordingly, the Dales' right to equitable subrogation rests entirely on whether their payment was made involuntarily.

A voluntary payment is made by a party "without any assignment or agreement for subrogation, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property." *Frymire Eng'g*, 259 S.W.3d at 145 (quoting *First Nat'l Bank of Kerville v. O'Dell*, 856 S.W.2d 410, 415 (Tex. 1993)). Courts should be liberal in interpreting whether a payment is made involuntarily. *Frymire Eng'g*, 259 S.W.3d at 145 (quoting *Argonaut Ins. Co. v. Allstate Ins. Co.*, 869 S.W.2d 537, 542 (Tex. 1980)).

Before the Dales made any payment to Wells Fargo, they signed a Contract of Understanding with Ms. Dahlin. The Contract of Understanding stated: "[The Dales] will hold first lien on the above property . . . [the Dales] will loan the amount of $200,003.05 to [Ms. Dahlin] . . . Transfer of money for payoff amount to Wells Fargo . . . will be in the amount of $188,000." (ECF No. 14-4 at 1). The Dales voluntarily entered into the Contract of Understanding; once signed, the Dales incurred a legal obligation and were obligated to make the payment to Wells Fargo. Texas courts liberally interpret whether payments were made involuntarily, so the Dales' payment pursuant to the Contract of Understanding comports with Texas law as an "involuntary" payment. *See Langston v. GMAC Mortg. Corp.*, 183 S.W.3d 479, 481 (Tex. App.—Eastland 2005, no pet.) (holding that payment done at debtor's request and in exchange for first lien on property was done involuntarily); *Murray v. Cadel Co.*, 257 S.W.3d 291, 300 (Tex. App.— Dallas 2008, pet. denied) (holding involuntary payment was made when

home purchasers paid off lien at the request of a debtor). Thus, the Dales were equitably subrogated to Wells Fargo with regard to the debt Ms. Dahlin owed.

*Effect of Equitable Subrogation*

The Trustee and the Dales disagree on what rights equitable subrogation provides the Dales. The Trustee claims that the Dales were holders of an unsecured lien on the property on the day of the bankruptcy filing. (ECF No. 13 at 11). The Dales argue that equitable subrogation is a right "contingent upon a successful lawsuit" rather than a lien, and that "there was no *lien* to *avoid* as of the petition date." (ECF No. 14 at 6).

As discussed earlier, equitable subrogation is a legal fiction that "allows a party . . . to step into the shoes of and pursue the claims belonging to a party with standing." *Frymire Eng'g,* 259 S.W.3d at 142. Wells Fargo held the first lien over the property and the Contract of Understanding gave the Dales the right to "hold first lien on the above property" in exchange for paying off Wells Fargo's interest. (ECF No. 14-4 at 1). Based on the Contract of Understanding between Ms. Dahlin and the Dales, it appears that the Dales received a lien in exchange for paying off Wells Fargo's interest in the property. However, the Dales suggest that case law requires a payor to adjudicate their right before equitable subrogation results in a lien. *See Johnson v. Koenig,* 353 S.W.2d 478, 483 (Tex. App.—Austin, writ ref'd n.r.e.); (ECF No. 14 at 6).

Even if the Court accepts the Dales' argument and adopts their theory that equitable subrogation is a right rather than a lien, the outcome remains the same. The Dales do not have any greater right to the property in bankruptcy than they had before Ms. Dahlin filed her bankruptcy petition. The Dales filed a proof of claim in Ms. Dahlin's bankruptcy case, asserting the secured right to payment for $197,806.90. Regardless of whether the Court adopts the

Trustee's view or the Dales' view, they both fall within definition of a "Claim" under the Bankruptcy Code:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5)(A). (Case No. 16-36169 Proof of Claim No. 11-1 at 2). Whether the Dales have a lien that gives them a right to payment, or a right to an equitable remedy in the form of equitable subrogation, the plain language of the Bankruptcy Code treats both rights as a "claim." *Id*. Accordingly, the Court makes no finding regarding whether the Dales have a lien or an inchoate right to a lien that must first be recognized by a court. For the purpose of this adversary proceeding, the Dales asserted a claim against Ms. Dahlin for the amount paid to Wells Fargo.

Importantly, the parties' arguments failed to recognize the fact that the Contract of Understanding itself constitutes a lien against the property. *See Donie State Bank v. Parker*, 554 S.W.2d 858, 860 (Tex. Civ. App.—Waco 1977, writ ref'd n.r.e.) (recognizing "contractual deed of trust lien"). As between Ms. Dahlin and the Dales, the Contract of Understanding is sufficient to create a lien because a consensual lien need not be recorded to be enforceable between the parties. *See In re White*, 408 B.R. 677, 682–83 (Bankr. S.D. Tex. 2009) (holding that an unperfected lien "is valid between the Debtor and the Claimant").

*Trustee's Strong Arm Powers*

The Trustee claims 11 U.S.C. § 544(a)(3) imbues him with the status of a bona fide purchaser of real property who takes the property free of any unperfected security interest. (ECF

No. 13 at 9–12). Since the Dales failed to record the Deed of Trust and Promissory Note until approximately one day after Ms. Dahlin filed her bankruptcy petition, the Trustee seeks to avoid their interest in the property. (ECF No. 13 at 11–12). The Dales argue that § 544(a)(3) cannot apply because no transfer of Ms. Dahlin's property occurred. (ECF No. 14 at 7). Section 544(a) states: "The Trustee may . . . avoid any transfer of property *or any obligation* incurred by the debtor . . . ." (emphasis added). The entire basis of the Dales' argument ignores the second half of § 544(a) because the Trustee's strong arm power applies equally to obligations incurred by a debtor as it does to transfers made by a debtor. *Goodrich Petroleum Corp. v. Fallon (In re Goodrich Petroleum Corp.)*, 894 F.3d 192, 197 (5th Cir. 2018) (holding that the trustee may avoid both the debtor's transfers of property as well as obligations the debtor incurred). The parties agree that on November 9, 2016, Ms. Dahlin entered into a Contract of Understanding with the Dales under which they would pay off her debt to Wells Fargo in exchange for a first lien on the property. (ECF No. 14 at 3). Entering into this contract is unequivocally an obligation Ms. Dahlin incurred in favor of the Dales; accordingly, § 544 may be applied.

However, while § 544(a)(3) gives the Trustee the status of a bona fide purchaser of real property, state law dictates whether that status applies to the transaction in question. *In re Hamilton*, 125 F.3d. 292, 298 (5th Cir. 1997). Under Texas law, a conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law. TEX. PROP. CODE § 13.001(a). The Trustee's actual notice of a lien is irrelevant under 11 U.S.C. § 544, which requires the existence of constructive or inquiry notice. *In re Hamilton*, 125 F.3d at 299; *In re Santoyo*, 540 B.R. 284, 291 (Banrk. S.D. Tex. 2015). Thus, the only way for the Dales to

overcome the Trustee's hypothetical status as a bona fide purchaser is to demonstrate that the Trustee had either constructive or inquiry notice of their interest in the property before Ms. Dahlin filed her bankruptcy petition. *Id*.

The Dales admit that they did not record their Deed of Trust until December 6, 2016, one day after Ms. Dahlin filed her bankruptcy petition. (ECF No. 14 at 4). Similarly, neither party attempted to record the Contract of Understanding in compliance with the Texas recording statute. (*See generally* ECF Nos. 14, 13). Accordingly, without a properly recorded instrument before the bankruptcy petition was filed, constructive notice could not have existed. *In re Hamilton*, 125 F.3d at 299.

Inquiry notice requires that a person make "reasonable diligent inquiry using the facts at hand in the recorded deed" and "every purchaser of land is charged with knowledge of all facts appearing in the chain of title." *Nguyen v. Chapa*, 305 S.W.3d 316, 324–25 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). The last recorded document in the chain of title was the release of lien that Wells Fargo recorded on December 2, 2016, after the Dales wired the money to pay off the Wells Fargo loan balance. (ECF No. 14 at 4). No document in the chain of title existed demonstrating any party other than Ms. Dahlin had an interest in the property, so no inquiry notice existed for the Trustee.

After Ms. Dahlin signed the Contract of Understanding, she became obligated to repay the Dales. (ECF No. 14 at 3). However, the Dales failed to record either the Contract of Understanding or the Deed of Trust until after Ms. Dahlin filed her bankruptcy petition. (ECF No. 14 at 4). As a result, the Trustee, as a bona fide purchaser under 11 U.S.C. § 544(a)(3), may avoid the obligation to pay the Dales out of the proceeds from the home.

*Avoidable Postpetition Transfer*

Even if the Trustee's power as a hypothetical bona fide purchaser were inapplicable, the Trustee may still avoid the Dales' interest in the property as a post-petition transfer. The Bankruptcy Code allows the Trustee to avoid unauthorized transfers of property of the estate that occur after the commencement of the bankruptcy case. 11 U.S.C. § 549(a)(1). To establish an avoidable post-petition transfer, four elements are required under § 549: (i) there must be a transfer, (ii) that occurred without court authorization, (iii) after the commencement of the case, and (iv) the transfer consisted of estate property. *In re Contractor Tech., Ltd.*, 343 B.R. 573, 576 (Bankr. S.D. Tex. 2006). Transfers are broadly defined as "the creation of a lien; the retention of title as a security interest . . . disposing of property or an interest in property." 11 U.S.C. § 101(54).

The Dales admit that they received the deed of trust and promissory note from Ms. Dahlin and recorded it after she filed her bankruptcy petition. (ECF No. 13 at 7). This gave the Dales a security interest in the property and fits within the definition of a transfer under § 101(54). This satisfies the requirements that a transfer occurred after the commencement of the case. It is undisputed that the Court did not authorize the transfer. Finally, as discussed below, upon the filing of the case, the home and ensuing insurance proceeds became property of the bankruptcy estate. 11 U.S.C. § 541(a)(1). Accordingly, the Trustee has satisfied the four requirements of § 549 and may also avoid the Dales' lien on the property as a post-petition transfer.

It is true that the avoidance of the post-petition transfer would not constitute an avoidance of any pre-petition transfer. For the reasons set forth above, the pre-petition transfer made in the Contract of Understanding is avoidable for independent reasons.

*Exempt Property*

The Dales argue the Trustee's strong arm power cannot reach the property and the ensuing insurance proceeds because Ms. Dahlin declared the property exempt on her bankruptcy schedules, removing it from her bankruptcy estate. (ECF No. 14 at 8). After a debtor files a bankruptcy petition, an estate is created consisting of "all legal and equitable interests of the debtor in property as of the commencement of the case" and "any interest in property that the trustee recovers." 11 U.S.C. § 541(a)(1), (3). A debtor may then elect to remove certain property carved out by federal or state law from the estate. 11 U.S.C. § 522(b). Importantly, this exempt property is withdrawn from the estate "for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308 (1991). "Anything properly exempted passes through bankruptcy; the rest goes to the creditors." *In re Hawk*, 871 F.3d 287, 290 (5th Cir. 2017) (quoting *Payne v. Wood*, 775 F.2d 202, 204 (7th Cir. 1985)).

Specifically, the Dales urge the Court to combine the debtor's exemptions with the "snapshot rule" that the Fifth Circuit applied in *Hawk* in order to find that the "exemption relates back to the petition date." (ECF No. 14 at 10). The plain language of the Bankruptcy Code contradicts the Dales' view of how exempt property moves through bankruptcy. Section 541(a) creates a bankruptcy estate consisting of "all legal and equitable interests." Once Ms. Dahlin filed her bankruptcy petition, the property became part of her bankruptcy estate. Only after the property was incorporated into the estate could Ms. Dahlin designate it as exempt. The statute does not provide any different order for this process. The Dales concede that they are unable to find any authority supporting their position. (ECF No. 14 at 10).

Additionally, the Dales' reliance on the snapshot rule as the foundation of their argument is misplaced. The snapshot rule holds that the *date of filing* fixes "the status and rights of the

bankrupt, the creditors and the trustee." *White v. Stump*, 266 U.S. 310, 314 (1924). The Dales admit that on December 5, 2016, when Ms. Dahlin filed her bankruptcy petition, they had yet to record the Deed of Trust securing their interest in the home. (ECF No. 14 at 4). Even relying on the snapshot rule, the Dales have no right to a secured claim in the home.

*Preservation for the Benefit of the Estate*

The Trustee claims that, once the Dales' interest in the property is avoided, §§ 550 and 551 preserve the interest in the property for the benefit of the bankruptcy estate. (ECF No. 13 at 12–16). The Dales allege § 550 is inapplicable because it is a mechanism to recover property transferred to a third party, which never occurred because the Dales never received legal title to the property. (ECF No. 14 at 11). They also claim that Ms. Dahlin's claimed exemptions would not preserve the Dales' interest for the estate's benefit but would instead result in a windfall for Ms. Dahlin. (ECF No. 14 at 12).

Section 550(a)(1) states that "the trustee may recover the transferred property either from the initial transferee or the entity for whose benefit the transfer was made" while § 551 preserves avoided liens for the benefit of the estate. 11 U.S.C. § 551. As discussed earlier, the Trustee may avoid the Dales' interest in the property under 11 U.S.C. § 544 because they held an unperfected interest in the property on the filing date. While the Dales never received title to the property from Ms. Dahlin, they did receive an unperfected security interest in it when Ms. Dahlin provided them with the Contract of Understanding and again when she executed the Deed of Trust and Promissory Note. (ECF No. 14 at 4). The granting of a security interest constitutes a "transfer" for the purposes of § 544. *See* 11 U.S.C. § 101(54).

Accordingly, the relief that the Trustee requests under these sections of the Bankruptcy Code entitles him to a judgment declaring that the Dales are limited to a general unsecured claim

against the estate. *See In re Advanced Modular Power Sys., Inc.*, 413 B.R. 643, 672–73 (Bankr. S.D. Tex. 2009) (holding that post-petition transfers satisfying 11 U.S.C. § 549(a) may be recovered under § 550).

Whether relegating the Dales' proof of claim unsecured creates a windfall for Ms. Dahlin is an issue that is not currently before the Court. The parties' motions for summary judgment consider one issue—the extent of the Dales' interest in the property compared with the Trustee, not Ms. Dahlin's ultimate distribution. Nevertheless, the Court notes that Ms. Dahlin's exemption rights cannot extend to value that secures a lien. TEX. PROP. CODE § 42.001(a) (stating that personal property may be exempted "exclusive of the amount of any liens . . . encumbering the property"); *In re Graham*, 64 B.R. 469, 472 (Bankr. S.D. Tex. 1986) (holding that vehicle subject to a secured lien cannot be exempt property). If a lien is avoided, the value of the lien becomes estate property not subject to an exemption claim. 11 U.S.C. § 522(g); *In re Salaymeh*, 361 B.R. 822, 829 (Bankr. S.D. Tex. 2009).

*Constructive Trust*

The Dales argue that the Court should apply the doctrine of constructive trust in order to prevent Ms. Dahlin or the Trustee from benefitting from unjust enrichment. (ECF no. 27 at 2–3). This argument is best construed as purporting that Ms. Dahlin serves as the constructive trustee while the Dales are the constructive beneficiary. (ECF No. 27 at 2). According to the Dales, when viewed as a constructive trust, Ms. Dahlin never held actual title to the property. Thus, the property and insurance proceeds could never have entered the bankruptcy estate. (ECF No. 27 at 2).

Under Texas law, courts may apply the doctrine of constructive trusts as an equitable remedy to "prevent a wrongdoer from profiting from her wrongful acts." *Gray v. Sangrey*, 428

S.W.3d 311, 315 (Tex. App.—Texarkana 2014). The purported holder of the constructive trust must satisfy three elements: (1) the breach of a special trust, fiduciary relationship, or actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing to an identifiable *res*. *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App.—Dallas 2006, no pet.). If a court of equity deems a constructive trust is the appropriate legal remedy, subsequent transferees are subject to the trust. *Cote v. Texcan Ventures II*, 271 S.W.3d 450, 453 (Tex. App.—Dallas 2008, no pet.). However, if title is acquired by "higher right" who purchases in good faith, provides consideration, and lacks notice of the trust, such a purchaser takes free of the trust's interest. *Teve Holdings, Ltd. v. Jackson*, 763 S.W.2d 905, 908 (Tex. App.—Houston [1st Dist.] 1988, no writ) (quoting *Fitz-Gerald v. Hull*, 237 S.W.2d 256, 263 (1951)); *Cote*, 271 S.W.3d at 453.

As discussed earlier, under 11 U.S.C. § 544(a)(3) the Trustee obtains the status of a "bona fide purchaser of real property . . . from the debtor." The Bankruptcy Code confers the status of a bona fide purchaser on the trustee, but state law defines that status. *In re Hamilton*, 125 F.3d 292, 298 (5th Cir. 1997). Under Texas law, a bona fide purchaser is one who acquires title in good faith, for valuable consideration, and without notice of defects in title. *Id.* (citing *Strong v. Strong*, 98 S.W.2d 346, 347 (Tex. 1936)).

The Dales' interest in the home was unperfected at the time Ms. Dahlin filed her bankruptcy petition. (ECF No. 14 at 4). Pursuant to § 544, the Trustee avoids the Dales' unperfected interest, invoking his status as a bona fide purchaser, acquiring title for consideration and without notice under Texas law. *In re Hamilton*, 125 F.3d at 298. Even if the Court held that a constructive trust existed in this situation, because the Trustee acquired title as a bona fide purchaser, the Trustee's rights would not be subject to the trust. Accordingly, a constructive

trust would not provide the Dales with a remedy against the Trustee's interest in the home or insurance proceeds.

## Conclusion

The Court will enter a Judgment consistent with this Memorandum Opinion.

SIGNED **August 28, 2018.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE